1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KELVIN MERJERYL ALLEN,                  No.  2:12-cv-2622-JAM-EFB P

12                Petitioner,

13        vs.                                 FINDINGS AND RECOMMENDATIONS

14   RONALD E. BARNES,

15                Movant.

16

17        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him in

19   2010 in the Solano County Superior Court on charges of attempted involuntary manslaughter,

20   corporal injury to a cohabitant, assault with a firearm, and mayhem.  He seeks federal habeas

21   relief on the following grounds: (1) the trial court's admission into evidence of his prior acts of

22   domestic violence violated his right to due process; (2) the trial court violated state law in

23   imposing separate and unstayed sentences on both the firearm use sentence enhancement and the

24   great bodily injury sentence enhancement as to the charge of mayhem; (3) the trial court's

25   imposition of a separate sentence enhancement for infliction of great bodily injury in connection

26   with the mayhem charge violated the Double Jeopardy Clause, the Fourteenth Amendment Due

27   Process Clause, and state law; and (4) the trial court's imposition of the upper term on the great

28   bodily injury and firearm use sentence enhancements constituted an abuse of discretion under

1

state law.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the First Appellate District provided the following factual summary of petitioner's crimes of conviction:

> Defendant Kelvin Menjeryl Allen was convicted of several charges and related enhancements after he shot and seriously injured his girlfriend, Mickey Kentra.  The trial court sentenced defendant to 19 years in prison.  On appeal, defendant contends the court erred by: (1) admitting evidence of his prior acts of domestic violence against Kentra, (2) failing to stay one of the enhancements under Penal Code section 654,[1] and (3) imposing upper-term sentences on the enhancements.
>
> We reject defendant's arguments.  However, we modify the judgment to correct the implementation of section 654 as to some of the charges against defendant, and to correct one other discrepancy in the sentence.  We affirm the judgment as modified.
>
> **I. FACTUAL AND PROCEDURAL BACKGROUND**
>
> **A. The Charges Against Defendant**
>
> An information charged defendant with: (1) attempted deliberate, premeditated murder (§§ 187, subd. (a), 664; count one); (2) inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); count two); (3) assault with a firearm (§ 245, subd. (a)(2); count three); and (4) mayhem (§ 203; count four).  As to all counts, the information alleged defendant personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).
>
> **B. The Evidence Presented at Trial**
>
> Kentra and defendant began dating a few years before the October 15, 2009, shooting.  They began living together at defendant's mother's house, where they stayed for about a year and a half.  In January 2009, Kentra moved into a two-bedroom apartment at 1513 Alamo Drive in Vacaville.  A few months later, defendant moved into the apartment with Kentra's permission.  Kentra and defendant shared a bedroom and slept in the same bed.  From January to October 2009, Kentra worked at a gas station and paid the bills.

---

[1] All statutory references are to the Penal Code unless otherwise stated.  All references to statutes defining criminal offenses or setting out punishments or enhancements refer to the versions of those statutes in effect on October 15, 2009, the date of the charged crimes.

A few months prior to October 2009, defendant acquired a shotgun, which he kept by his side of the bed.  He kept shotgun shells in the bedroom and in their car.  He sometimes kept the gun loaded.  He had a lock for the gun, but rarely if ever used it.  When defendant walked his dog, which he did most days, he took the shotgun with him.  Defendant generally took the shotgun with him when he left the apartment.

Kentra and defendant had a turbulent relationship, and defendant frequently accused Kentra of having sexual relations with men she met at work.   Defendant drove Kentra to and from work.  Defendant sometimes sat in the car and watched Kentra work, and he became jealous because of her interactions with male customers.  Toward the end of their relationship, Kentra told defendant (about once or twice per month) that she wanted to leave him and did not want to be with him anymore.  About four to six times prior to October 15, 2009, defendant threatened to kill Kentra.

Defendant and Kentra had physical altercations during which he punched and kicked her.  In December 2007, while they were living with defendant's mother, defendant kicked Kentra's arm and broke it.  Kentra did not report the incident to the police.  When she went to the hospital for treatment, she told the staff she fell down the stairs, because she did not want to get defendant in trouble.  On a different occasion at defendant's mother's house, defendant shot Kentra with a pellet gun.  Once when Kentra returned from work, defendant accused her of cheating on him and hit her.  When Kentra fell down, defendant kicked her.  Although she had "a bunch of bruises," Kentra did not call the police or tell anyone about the incident because she was afraid.

Joleen Moore testified that, in May 2009, she was outside her second-floor apartment at 1513 Alamo Drive when she heard defendant and Kentra arguing in front of their apartment.  Defendant attempted to get Kentra to come into the apartment by pulling her hair.  He then struck Kentra in the face with his open hand.  Moore yelled that she was going to call the police, and defendant began walking toward her.  Moore went into her apartment.

Monique Claxton and her eight-year-old son lived in the spare bedroom in Kentra's apartment for a few months beginning approximately in August 2009.  Claxton frequently heard Kentra and defendant arguing.  One morning Claxton, who was in her bedroom with the door shut, heard arguing and then the sound of someone punching another person.   Claxton came out of her bedroom and saw Kentra sitting on the couch and defendant standing over her, punching her head and face with his fists.  Kentra was holding her hands above her head and face, attempting to block defendant's punches.  Defendant punched Kentra at least five to seven times.

As to this incident, Kentra testified she called defendant a derogatory name, and he began punching her.  Defendant said "'Bitch, don't do that to me.  Don't call me names.  I don't call out

to you names.  Don't ever do it again because I'll beat your ass.' "
When Claxton came out of her room and told defendant to stop, he
did so.  Claxton called the police.  When the police arrived, Kentra
told them she and defendant had been arguing but did not mention
the physical abuse, because she did not want defendant to get into
trouble.  Claxton and her son moved out prior to October 15, 2009.

On October 15, 2009, Kentra and defendant went to a swap meet in
Concord so defendant could sell some items.  Defendant left his
shotgun on the bed.  On the drive back to Vacaville, defendant and
Kentra argued.  When they arrived at the apartment, defendant told
Kentra not to say anything and to go inside.  Kentra sat down on the
couch and they continued arguing.  Kentra told defendant to leave.
He responded by saying, "'Bitch, I will kill you,'" or "'I'm going to
kill you, bitch.'"  He walked into the bedroom.

Kentra was afraid because defendant had previously threatened to
kill her, and because of the tone of his voice and the look in his
eyes.  Kentra thought about running out the front door but did not
do so, because defendant had locked the door when they arrived.
Defendant always locked the door with four separate locks when
they went into the apartment.

Kentra heard a clicking noise she recognized as the sound of
defendant putting shells into the shotgun.  Defendant came out of
the bedroom holding his shotgun.  He had been in the bedroom for
a few seconds.  Defendant raised the shotgun to his shoulder and
pointed it at Kentra.  He said, "'Bitch, I'm going to kill you.'"
Kentra responded, "'Go ahead.  It's better than living here with
you.'"

As Kentra raised her left arm to cover her head, defendant shot her.
Kentra testified she saw "this piece fly out of my arm," and saw "all
the tendons hanging."   She passed out and did not regain
consciousness until she woke up in the hospital.  Kentra did not
threaten defendant before he shot her, and she did not throw
anything at him or kick or hit him.

Kentra spent nine days in the hospital, including four in intensive
care.  She sustained shotgun pellet wounds to her left arm, chest,
face and neck.  Nerve damage in her mouth required the extraction
of her back teeth.  She had scarring on her face, neck and chest.
Shotgun pellets were lodged in and around her heart.  One pellet
blocked a blood vessel and caused her to suffer a "small heart
attack."   Doctors did not attempt to remove the pellets from
Kentra's heart because doing so could have caused greater damage.
A pellet lodged in Kentra's esophagus.

Kentra sustained severe injuries to her left arm, including extensive
loss of skin and muscle tissue and damage to her arteries and
nerves.   Doctors performed several major surgeries, including
removing a vein from her calf and transplanting it to her forearm.
They also did a "tendon transfer reconstruction."  The damage to
Kentra's hand and arm is permanent.  She cannot fully open her

4

hand and has only a "rudimentary grasp" without fine motor control or sensation. She is missing part of her arm.

Christine Robinson, who lived in the apartment next to Kentra's, heard defendant yelling at Kentra. Robinson heard defendant scream at Kentra that he hated her and wished she was dead. Robinson heard a gunshot. She then heard defendant scream, "'Oh, no. Oh, no.'" Robinson called 911.

Defendant also called 911, less than a minute after Robinson did so, and reported he had shot his girlfriend. Police arrived and detained defendant outside the apartment. Defendant was distressed and crying, and had blood on his arms and shirt. He initially was cooperative, but later became "extremely agitated," and it took five officers to subdue him. Defendant said, "'She's in there. Go help her.'" He said he was stupid to have pointed the gun at Kentra, and said, "'I can't believe it.'"

Officers found Kentra lying on the floor. She had shotgun pellet wounds to her arm, chest, neck and face. There was a large amount of blood on Kentra and on the floor.

Defendant's shotgun was on the floor next to Kentra. The gun contained one expended round and five live rounds. It was a "standard pump shotgun" that functioned properly and did not fire when jarred or jolted.

After being transported to the police station, defendant waived his *Miranda* [2] rights and spoke to police. Defendant said he and Kentra had been in a dating relationship for approximately three years. He said they fought frequently, usually because he thought Kentra's former friends were a bad influence on her. He also believed she had cheated on him in the past. Defendant said their arguments sometimes became physical to the point of grabbing each other. He did not admit kicking, punching or slapping Kentra. Defendant stated that, on October 15, 2009, he and Kentra were arguing when he grabbed her by the hair and yelled in her face, and she then scratched his face. Defendant stated he was going to leave Kentra and gathered his belongings, including his shotgun. He pointed the shotgun at her, and it accidentally went off. He denied racking or cocking the gun. During the interview, defendant asked about Kentra's condition. When the detective asked if defendant had pointed the gun at Kentra on previous occasions, defendant ended the interview.

## C. The Verdicts and Sentence

In defendant's first trial, the jury convicted him of corporal injury of a cohabitant, assault with a firearm, and mayhem (counts two, three, and four), and found true the related allegations of firearm use and great bodily injury/domestic violence. The jury was unable to reach a verdict as to the attempted murder charge (count one), and the trial court declared a mistrial as to that count.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

> After a retrial on count one, defendant was acquitted of attempted murder, but convicted of the lesser offense of attempted voluntary manslaughter (§§ 192, subd. (a), 664). The jury found true the related enhancement allegations as to firearm use and great bodily injury/domestic violence.
>
> The trial court sentenced defendant to the midterm of four years on the mayhem count (count four) and the upper terms on the related enhancements for firearm use (10 years), and great bodily injury/domestic violence (five years), for an aggregate term of 19 years. The court stated that, pursuant to section 654, "sentencing will be stayed on" counts one, two and three, as well as on the associated enhancements for great bodily injury/domestic violence; the court did not mention the firearm enhancements for those counts.

*People v. Allen*, No. A129723, 2012 WL 844532 (Cal.App. 1 Dist., Mar. 14, 2012), at **1-4. After analyzing petitioner's appellate claims, the California Court of Appeal modified the judgment to impose and stay certain sentences and corrected the judgment to reflect an accurate statutory reference, but otherwise affirmed petitioner's judgment of conviction. *Id.* at 11.

Petitioner subsequently filed a petition for review in the California Supreme Court, in which he raised the same claims that are contained in the petition before this court. Answer, Ex. G. That petition was summarily denied by order dated June 14, 2012. Answer, Ex. H.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

/////

1

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5      For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

6  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

7  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

8  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

9  Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

10  what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

11  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

12  precedent may not be "used to refine or sharpen a general principle of Supreme Court

13  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

14  *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

15  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

16  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

17  be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

18  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

19  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

20      A state court decision is "contrary to" clearly established federal law if it applies a rule

21  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

22  precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

23  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

24  writ if the state court identifies the correct governing legal principle from the Supreme Court's

25  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v.*

26

27      [3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28  384 F.3d 628, 638 (9th Cir. 2004)).

1    *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

2    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

3    court concludes in its independent judgment that the relevant state-court decision applied clearly

4    established federal law erroneously or incorrectly.  Rather, that application must also be

5    unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

6    (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

7    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

8    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

9    'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

10    *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

11    652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

12    court, a state prisoner must show that the state court's ruling on the claim being presented in

13    federal court was so lacking in justification that there was an error well understood and

14    comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

15    S. Ct. at 786-87.

16         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17    court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

18    527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

19    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20    § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21    considering de novo the constitutional issues raised.").

22         The court looks to the last reasoned state court decision as the basis for the state court

23    judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

24    the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25    previous state court decision, this court may consider both decisions to ascertain the reasoning of

26    the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

27    a federal claim has been presented to a state court and the state court has denied relief, it may be

28    presumed that the state court adjudicated the claim on the merits in the absence of any indication

1   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

2   presumption may be overcome by a showing "there is reason to think some other explanation for

3   the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

4   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

5   but does not expressly address a federal claim, a federal habeas court must presume, subject to

6   rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___,

7   ___, 133 S.Ct. 1088, 1091 (2013).

8          Where the state court reaches a decision on the merits but provides no reasoning to

9   support its conclusion, a federal habeas court independently reviews the record to determine

10  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

11  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

12  review of the constitutional issue, but rather, the only method by which we can determine whether

13  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

14  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

15  reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

16         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

17  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

18  just what the state court did when it issued a summary denial, the federal court must review the

19  state court record to determine whether there was any "reasonable basis for the state court to deny

20  relief." *Richter*, 131 S. Ct. at 784.  This court "must determine what arguments or theories ...

21  could have supported, the state court's decision; and then it must ask whether it is possible

22  fairminded jurists could disagree that those arguments or theories are inconsistent with the

23  holding in a prior decision of [the Supreme] Court." *Id.* at 786.  The petitioner bears "the burden

24  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

25  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

26         When it is clear, however, that a state court has not reached the merits of a petitioner's

27  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

28  /////

9

1  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

2  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

3  **III.  Petitioner's Claims**

4      **A.  Erroneous Admission of Evidence**

5          In his first ground for relief, petitioner claims that the trial court's admission into evidence

6  of his prior acts of domestic violence against Kentra violated his right to due process.  ECF No. 1

7  at 27-32.[4]  He argues that this evidence was improperly admitted as to three of the counts against

8  him (attempted murder, mayhem and assault with a deadly weapon) because those counts did not

9  involve domestic violence.  He contends the evidence was irrelevant and unduly inflammatory as

10  to those three counts.  *Id.*  Petitioner specifically complains that evidence of his prior acts of

11  domestic violence was admitted at his retrial on the sole count of attempted murder, which "did

12  not involve domestic violence as an essential element."  *Id.* at 27.  Petitioner argues that the

13  evidence of prior crimes should have been restricted to the corporal injury count at his first trial.

14  *Id.* at 28.  Petitioner also argues that the trial erred in instructing the jurors that they could

15  consider the evidence of prior domestic violence in connection with all of the counts against him,

16  instead of limiting the applicability of this evidence to just the corporal injury count.  *Id.*

17          The California Court of Appeal rejected these arguments, reasoning as follows:

18              **A. Prior Acts of Domestic Violence**

19              **1. Background**

20              Prior to both trials, defendant moved in limine to exclude evidence
21              of his prior domestic violence, arguing it constituted inadmissible
                character evidence under Evidence Code section 1101, was
22              irrelevant and unduly prejudicial, and would violate his due process
                rights.  In both instances, the trial court excluded evidence that
23              defendant committed an act of domestic violence against his former
                wife in 1995, but admitted evidence of defendant's prior domestic
24              violence against Kentra under Evidence Code section 1109.  The
                court instructed the jury it could consider the uncharged acts in
25              determining whether defendant was "disposed or inclined" to
                commit domestic violence, and whether he committed the charged
26              offenses.

27  _____

28          [4] Page number citations such as this one are to the page numbers reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

## 2. Analysis

Evidence of a person's past conduct generally is inadmissible to show his or her propensity to commit the charged crime, but is admissible to prove facts other than propensity, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (Evid.Code, § 1101, subds.(a), (b).) Under Evidence Code section 1109, in "a criminal action in which the defendant is accused of *an offense involving domestic violence*, "evidence of other acts of domestic violence is admissible to show propensity.   (Evid.Code, § 1109, subd. (a)(1), italics added.) Defendant contends three of the charges against him - attempted murder, assault with a firearm, and mayhem (counts one, three and four) - were not offenses involving domestic violence within the meaning of the statute, because those crimes do not "inherently" involve domestic violence.[5]   Defendant argues it is not sufficient that the evidence established his crimes in fact involved domestic violence.[6]

"A trial court's determination of the admissibility of evidence of uncharged offenses is generally reviewed for an abuse of discretion. [Citations.]  To the extent the trial court's ruling depends on the proper interpretation of the Evidence Code, however, it presents a question of law; and our review is de novo. [Citation.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 794–795 (*Walker*).)

Evidence Code section 1109 does not include a list of offenses that involve domestic violence.[7]   Instead, the statute incorporates the definition of domestic violence in section 13700 (and, under certain circumstances, the broader definition in Family Code section 6211). (Evid.Code, § 1109, subd. (d)(3).)   Section 13700 defines "domestic violence" as "abuse committed against an adult or a minor who is a . . . cohabitant . . . or person with whom the suspect . . . is having or has had a dating or engagement relationship" (§ 13700, subd. (b)); "'[a]buse'" means "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another" (§ 13700, subd. (a)). Applying these definitions, the evidence at trial clearly established that defendant's crimes involved domestic violence.   Kentra was

---

[5] Defendant concedes count two (corporal injury to cohabitant) inherently involves domestic violence.

[6] Defendant did not raise this contention in the trial court, instead arguing for exclusion on such grounds as irrelevance and prejudice.  He therefore has forfeited his argument. (*See People v. Ogle* (2010) 185 Cal.App.4th 1138, 1141–1142 [defendant forfeited argument that prior offense was inadmissible because it was not an act of domestic violence].)  In any event, as we discuss in the text, defendant's contention is meritless.

[7] In contrast, Evidence Code section 1108, which permits evidence of other sexual offenses when a defendant is "accused of a sexual offense," defines "'[s]exual offense'" by listing specified offenses and categories of conduct.  (Evid.Code, § 1108, subds.(a), (d)(1)(A)-(F).)

11

defendant's cohabitant and was a person with whom he was in a dating relationship.  Defendant intentionally or recklessly caused Kentra to suffer bodily injury, and placed her in reasonable apprehension of imminent serious bodily injury, when he threatened to kill her and then shot her.

Defendant relies on *Walker*, a murder case in which the trial court admitted evidence of other sexual offenses under Evidence Code section 1108, to support his argument that Evidence Code section 1109 does not apply. The *Walker* court stated the issue before it was "whether [Evidence Code] section 1108, subdivision (d)(1)(E)'s inclusion in the definition of sexual offense of crimes that involve '[d]eriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person' authorizes use of evidence of other sexual offenses when the circumstances under which a violent crime has been committed suggest the defendant derived sexual pleasure or gratification from the victim's pain, even though sexual pleasure or gratification is neither a necessary element of the charged offense nor alleged in the information as an enhancement or aggravating factor." (*Walker*, supra, 139 Cal.App.4th at p. 799.)  The appellate court interpreted section 1108 as requiring "that the requisite sexual transgression must be an element or component of the crime itself without regard to the evidence establishing a specific violation." (*Id.* at p. 800; *see also ibid.* [specified sexual misconduct must be "an element of the charge (or applicable enhancement or aggravating factor) and not simply a circumstance of the crime's commission"].)

In *People v. Story* (2009) 45 Cal.4th 1282 (*Story*), which also involved Evidence Code section 1108, the Supreme Court considered a similar issue.  In a prosecution for first degree felony murder based on the underlying offenses of rape and burglary, the trial court admitted evidence of defendant's other sexual assaults under Evidence Code section 1108. (*Story, supra*, 45 Cal.4th at pp. 1285–1288.)   The appellate court reversed the defendant's conviction, holding he was not "'accused of a sexual offense'" within the meaning of Evidence Code section 1108, because murder "'is not found in any of the enumerated Penal Code sections nor does it include as a necessary element nonconsensual sexual contact.'"  (*Story, supra*, 45 Cal.4th at p. 1291.)  The Supreme Court disagreed and affirmed the defendant's conviction.  The *Story* court declined to address whether *Walker* correctly interpreted Evidence Code section 1108, but held that *Walker* was distinguishable because it did not involve or discuss "the question whether an open murder charge prosecuted as first degree murder on a rape-felony-murder theory is a sexual offense under [Evidence Code] section 1108." (*Story, supra*, 45 Cal.4th at p. 1292.)  The *Story* court held that, even under the *Walker* court's narrow interpretation, the defendant had been accused of a sexual offense within the meaning of Evidence Code section 1108, because he had been charged with felony murder with rape as an underlying felony; accordingly, sexual misconduct was "an element or component of the crime itself . . . ." (*Story, supra*, 45 Cal.4th at p. 1292.)

/////

Defendant contends this court should adopt an interpretation of Evidence Code section 1109 similar to *Walker* 's interpretation of Evidence Code section 1108, and hold that attempted murder, assault with a firearm, and mayhem are not "offense[s] involving domestic violence," because domestic violence is not an essential element of those offenses. We reject this argument. First, assuming *Walker* correctly interpreted Evidence Code section 1108, defendant has not established that interpretation should be extended to Evidence Code section 1109. To the contrary, in *People v. Brown* (2011) 192 Cal.App.4th 1222, 1224–1225, 1230–1231, 1235–1237 (*Brown*), the appellate court expressly declined to extend *Walker* to Evidence Code section 1109, and concluded that the circumstances of a crime may establish it is an offense involving domestic violence, even if domestic violence is not an essential element of the crime. In *Brown*, the defendant was charged and convicted of first degree murder in the homicide of his former girlfriend. (*Brown, supra*, 192 Cal.App.4th at pp. 1224–1225, 1230–1231.) The trial court admitted evidence of the defendant's prior acts of domestic violence under Evidence Code section 1109, holding that murder was an offense "'involving domestic violence.'" (*Id.* at pp. 1230–1231.) The appellate court affirmed, stating: "Given the legislative history and the language of [Evidence Code] section 1109, we agree with the trial court's observation in this case that murder is 'the ultimate form of domestic violence,' and that defendant's prior acts of domestic violence were admissible based on the nature and circumstances of his relationship with and conduct toward Bridget. Defendant was charged with first degree murder based on strangling Bridget, his former girlfriend, after a lengthy period in which he tried to intimidate her because she chose to break up with him. He was clearly 'accused of an offense involving domestic violence' within the meaning of [Evidence Code] section 1109." (*Id.* at p. 1237.)

The *Brown* court rejected the defendant's argument that, under *Walker* and *Story*, prior acts of domestic violence are not admissible in a murder prosecution because murder is not listed as a crime involving domestic violence in either Evidence Code section 1109, section 13700, or Family Code section 6211. (*Brown, supra*, 192 Cal.App.4th at pp. 1237–1240.) While acknowledging that courts have described Evidence Code sections 1108 and 1109 as "'virtually identical,'" the *Brown* court held there were "important statutory distinctions relative to defendant's definitional arguments in this case." (*Id.* at p. 1238.) While Evidence Code section 1108 permits the introduction of propensity evidence when the defendant "'is accused of a sexual offense'" and defines that term in part with a list of enumerated offenses, Evidence Code section 1109 provides for the admission of propensity evidence when the defendant "'is accused of an offense involving domestic violence,'" and does not define that term with a specified list of offenses. (*Id.* at p. 1240.) Applying *Brown* here, defendant's prior acts of domestic violence were admissible because, as discussed above, the evidence established the charged offenses involved domestic violence.

A second basis for rejecting defendant's argument is that, even under the *Walker* approach, defendant's prior acts of domestic

1

2

3

4

5

6

7

violence would be admissible to show propensity as to all four charges.   Under *Walker*, the specified misconduct must be an element of the charged offense or "*alleged in the information as an enhancement or aggravating factor.*"   (*Walker, supra*, 139 Cal.App.4th at p. 799, italics added; *accord, id.* at p. 800.)   The information here alleged that, in the commission of all four offenses, defendant "*personally inflicted great bodily injury upon [Kentra], under circumstances involving domestic violence,*" within the meaning of section 12022.7, subdivision (e).[8]   (Italics added.)   Accordingly, defendant was, in each count, "accused of an offense involving domestic violence [.]" (See Evid.Code, § 1109, subd. (a)(1).)

8   *Allen*, 2012 WL 844532, at **4-6.

9   The question whether evidence of petitioner's prior acts of domestic violence against

10   Kentra was properly admitted under California law is not cognizable in this federal habeas corpus

11   proceeding.   *Estelle*, 502 U.S. at 67.   The only question before this court is whether the trial court

12   committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated

13   federal due process.   *Id.   See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)

14   ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or

15   absence of a state law violation is largely beside the point").

16   The United States Supreme Court "has never expressly held that it violates due process to

17   admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

18   it violates due process to admit other crimes evidence for other purposes without an instruction

19   limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275

20   F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S. 202

21   (2003).   In fact, the Supreme Court has expressly left open this question.   *See Estelle*, 502 U.S. at

22   75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law

23   would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

24   propensity to commit a charged crime").   Accordingly, the state court's rejection of petitioner's

25   due process claim is not contrary to United States Supreme Court precedent.

26   *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted

27

28   _____

   [8] Section 12022.7, subdivision (e) incorporates the definition of domestic violence in section 13700, subdivision (b), the same definition incorporated in Evidence Code section 1109.

14

1   objectively unreasonably in determining that the propensity evidence introduced against the

2   defendant did not violate his right to due process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67

3   (9th Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence

4   violated his due process rights under the Fourteenth Amendment because "the right [petitioner]

5   asserts has not been clearly established by the Supreme Court, as required by AEDPA"); *United*

6   *States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of

7   evidence of similar crimes in child molestation cases, under which the test for balancing probative

8   value and prejudicial effect remains applicable, does not violate the due process clause); *Smith v.*

9   *Roe*, 232 F. Supp. 2d 1073, 1088-89 (C.D. Cal. 2002) (applying analysis in *LeMay* to case

10   involving domestic violence).

11       In any event, any error in admitting evidence of petitioner's prior acts of domestic

12   violence did not have "a substantial and injurious effect or influence in determining the jury's

13   verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *See also Penry v. Johnson*, 532 U.S.

14   782, 793-96 (2001).  Petitioner was found guilty of attempted manslaughter, which requires a jury

15   finding that the defendant took at least one direct but ineffective step toward killing a person and

16   intended to kill that person, but was provoked and acted rashly and without due deliberation.

17   Clerk's Transcript on Appeal (CT) at 241.  As noted by respondent, the evidence that petitioner

18   took at least one direct step toward killing Kentra and intended to kill her is overwhelming, given

19   that he shot her at close range with a shotgun.  Although the prior crimes evidence was potentially

20   powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."

21   *LeMay*, 260 F.3d at 1030.  Evidence that petitioner had committed prior acts of domestic violence

22   against Kentra would not have had a substantial effect on the verdict under these facts.

23       The court also notes that the jury instructions in this case did not compel the jury to draw

24   an inference of propensity from evidence of petitioner's prior acts of domestic violence.  Rather,

25   the trial court instructed the jury at the close of the evidence that if they found petitioner had

26   committed the prior acts of domestic violence they could, but were not required to, "conclude

27   from that evidence that the defendant was disposed or inclined to commit domestic violence."

28   CT at 152 (first trial), 244 (second trial).  The jury was also instructed that if they found that

1    petitioner had such a disposition, they could, but were not required to, infer that he was likely to

2    have committed the charged offenses. *Id.* The jury was further instructed that if they concluded

3    that petitioner committed the prior acts, that conclusion was "only one factor to consider" and

4    was "not sufficient by itself to prove that [petitioner] is guilty of [the crimes charged]." *Id.* In

5    addition, the jury was instructed that the prosecution had the burden of proving all charges against

6    petitioner beyond a reasonable doubt. *Id.* The jury is presumed to have followed all of these

7    instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*, 503 F.3d 1006,

8    1018 (9th Cir. 2007).

9        In sum, the admission of petitioner's prior acts of domestic violence did not violate any

10   right clearly established by United States Supreme Court precedent or result in prejudice under

11   the circumstances of this case. Accordingly, petitioner is not entitled to relief on this due process

12   claim.

13       **B.  Failure to Stay Petitioner's Sentence**

14       In petitioner's next ground for relief, he claims that the trial court violated Cal. Penal

15   Code § 654[9] and his "right to be free of improper multiple punishment" when it imposed separate

16   and unstayed sentences on both the firearm use enhancement and the great bodily injury

17   enhancement as to the charge of mayhem. ECF No. 1 at 32-33. Petitioner conceded on direct

18   appeal that this issue was foreclosed by the state court decision in *People v. Ahmed*, 53 Cal.4th

19   156 (2011). *Id.* However, he explained that he was raising the claim for purposes of federal court

20   review. *Id.*

21   /////

22   /////

23   /////

24   /////

25   /////

26   ───────────────────

27       [9] Cal. Penal Code  § 654(a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under

28   more than one provision."

1    The California Court of Appeal rejected this sentencing claim based on the California

2  Supreme Court decision in *Ahmed*.  The court reasoned as follows:

3
> Defendant's first argument (i.e., that section 654 precludes
> imposition of multiple enhancements) fails.  Under *Ahmed*, section
4
> 1170.1 permits imposition of both a firearm enhancement and a
> great bodily injury enhancement, and it is unnecessary to consider
5
> section 654.  (*Ahmed, supra*, 53 Cal.4th at pp. 165–167, 169.)
> Defendant concedes this point in his supplemental brief.
6

7  *Allen*, 2012 WL 844532, at *8.

8    "[A] federal court is limited to deciding whether a conviction violated the Constitution,

9  laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  Habeas corpus relief is

10  unavailable for alleged errors in the interpretation or application of state sentencing laws by either

11  a state trial court or appellate court.  "State courts are the ultimate expositors of state law," and a

12  federal habeas court is bound by the state's construction except when it appears that its

13  interpretation is an obvious subterfuge to evade the consideration of a federal issue.  *Mullaney v.*

14  *Wilbur*, 421 U.S. 684, 691 (1975).  So long as a state sentence "is not based on any proscribed

15  federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by

16  indigency, the penalties for violation of state statutes are matters of state concern."  *Makal v. State*

17  *of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  *See also Cacoperdo v. Demosthenes*, 37 F.3d

18  504, 507 (9th Cir. 1994) ("[t]he decision whether to impose sentences concurrently or

19  consecutively is a matter of state criminal procedure and is not within the purview of federal

20  habeas corpus); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (petitioner's claim

21  regarding merger of convictions for sentencing was exclusively concerned with state law and

22  therefore not cognizable in a federal habeas corpus proceeding).  "Generally, a federal appellate

23  court may not review a state sentence that is within the statutory limits."  *Walker v. Endell*, 850

24  F.2d 470, 476 (9th Cir. 1987).

25    Petitioner's claim that the trial court violated the California Penal Code in imposing

26  multiple sentence enhancements on the mayhem charge was denied by the California Court of

27  Appeal on state law grounds.  The state court's decision that petitioner's sentence did not violate

28  /////

17

1    state law, derived from its analysis of state law, is binding on this court.  *See Lewis v. Jeffers*, 497

2    U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law . . . .").

3            Petitioner has failed to demonstrate that his sentence violated federal law or that the state

4    court's decision was contrary to or an unreasonable application of United States Supreme Court

5    authority.  Petitioner cites no federal cases in support of this claim, and there is no evidence

6    before the court that petitioner's sentence was violative of his right to due process or any other

7    federal constitutional right.  Because petitioner's allegations do not establish a federal

8    constitutional violation, he is not entitled to habeas corpus relief.

9            **C.  Double Punishment**

10           Petitioner's next claim is that the trial court imposed double punishment in violation of

11   state law when it sentenced him to a five year term for the great bodily injury enhancement.  ECF

12   No. 1 at 33.  He argues that pursuant to Cal. Penal Code § 12022.7, he could not receive an

13   additional term for the infliction of great bodily injury because it was an element of the offense of

14   mayhem.  *Id.*  Petitioner also argues that his sentence on the great bodily injury enhancement

15   violates the Double Jeopardy Clause because it constitutes multiple punishment for the same

16   offense.  *Id.* at 33-34.[10]

17           The California Court of Appeal summarized the claim that petitioner raised in that court

18   as follows:

19                  Defendant's second argument is that the trial court should have
                    stayed the great bodily injury enhancement because it overlapped
20                  with the underlying offense of mayhem.  In particular, defendant
                    notes that great bodily injury is an element of mayhem.  (*People v.*
21                  *Pitts* (1990) 223 Cal.App.3d 1547, 1559–1560 (*Pitts*); *People v.*
                    *Keenan* (1991) 227 Cal.App.3d 26, 36, fn. 7 (*Keenan*).)  Defendant
22                  also cites this court's decision in *People v. Harbert* (2009) 170
                    Cal.App.4th 42 (*Harbert*), in which we assumed section 654
23                  applied to a great bodily injury enhancement under section 12022.7,
                    and stated the trial court had correctly stayed the enhancement
24                  because it overlapped with the underlying offense (a violation of
                    Vehicle Code section 20001).  (*See Harbert, supra*, 170
25                  Cal.App.4th at p. 59; *but see People v. Chaffer* (2003) 111

26   _____
            [10] Petitioner was sentenced under Cal. Penal Code § 12022.7(e), which provides: "Any
27   person who personally inflicts great bodily injury upon another person under circumstances involving domestic
     violence in the commission of a felony or attempted felony shall be punished by an additional and
28   consecutive term of imprisonment in the state prison for three, four, or five years. As used in this
     subdivision, "domestic violence" has the meaning provided in subdivision (b) of Section 13700."

                                                    18

1    Cal.App.4th 1037, 1044–1045 [section 654 does not bar
     punishment for both (1) an offense and (2) a great bodily injury
2    enhancement].)

3    *Allen*, 2012 WL 844532 at *8.

4         The state appellate court denied petitioner's claim, described above,

5    reasoning as follows:

6         The *Ahmed* court did not consider a claim that section 654 limited
          the application of an enhancement because it overlapped with the
7         underlying offense.  As the parties agree in their supplemental
          briefs, however, *Ahmed* requires that we begin our analysis of this
8         claim by considering the specific sentencing statute at issue -
          section 12022.7.  (*See Ahmed, supra*, 53 Cal.4th at pp. 160–161,
9         162, 164.)  Subdivisions (a) through (e) of section 12022.7 provide
          enhancements for great bodily injury inflicted under various
10        specified circumstances; the enhancement in subdivision (e) is for
          great bodily injury under circumstances involving domestic
11        violence.    Subdivision (g) of section 12022.7 provides that
          "[s]ubdivisions (a), (b), (c), and (d) shall not apply if infliction of
12        great bodily injury is an element of the offense"; subdivision (g)
          does not specify such a limitation on the enhancement applicable
13        under subdivision (e), for great bodily injury under circumstances
          involving domestic violence.  Accordingly, although a section
14        12022.7 enhancement generally may not be applied where great
          bodily injury is an element of the offense, "[t]he enhancement may
15        be applied . . . if the crime is committed under circumstances
          involving domestic violence."  (*See People v. Hawkins* (2003) 108
16        Cal.App.4th 527, 530–531 (*Hawkins*).)

17        Here, defendant committed mayhem under circumstances involving
          domestic violence.  Accordingly, section 12022.7, subdivisions (e)
18        and (g), permit imposition of a great bodily injury enhancement.
          Because section 12022.7 resolves this question, we need not
19        consider the more general provisions of section 654.  (*See Ahmed,
          supra*, 53 Cal.4th at pp. 160–161, 162, 164, 169.)
20
          Defendant contends that section 12022.7, subdivision (g), is
21        "ambiguous in its omission of subdivision (e), relating to domestic
          violence," and that therefore the court should proceed to address
22        section 654.  According to defendant, section 12022.7, subdivision
          (g), could mean either (1) "the subdivision (e) enhancement is
23        always applicable, even if great bodily injury is an element of the
          substantive offense," or (2) "subdivision (e) is applicable, even
24        when great bodily injury is an element of the substantive offense,
          but only when domestic violence is not an element of that offense."
25        But this perceived ambiguity does not assist defendant - as
          defendant argued in his opening and reply briefs (in connection
26        with his challenge to the trial court's evidentiary rulings), domestic
          violence is not an essential element of mayhem.  (*See* § 203;
27        CALCRIM No. 801.)    Although defendant's offense in fact
          involved domestic violence, that could not provide a basis for
28        holding the enhancement under section 12022.7, subdivision (e), is

1

2

> inapplicable (as defendant appears to suggest).  To the contrary, the existence of "circumstances involving domestic violence" is what triggers that enhancement.  (See § 12022.7, subd. (e).)\

3

*Id.*

4

5

The opinion of the California Court of Appeal that petitioner's sentence on the great

6

bodily injury enhancement did not violate state law is binding on this court, for the reasons set

7

forth above.  The Court of Appeal did not specifically address petitioner's argument that the trial

8

court's imposition of a five year term for the great bodily injury sentence enhancement violated

9

the Double Jeopardy Clause.  However, this court will assume the state court adjudicated that

10

claim on the merits and will perform an independent review of the record to determine whether

11

the state court's decision was contrary to or an unreasonable application of controlling United

12

States Supreme Court precedent.  *Richter*, 131 S.Ct. at 884-85; *Johnson*, 133 S.Ct. at 1091;

*Stanley*, 633 F.3d at 860.

13

14

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be

15

subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.

16

Essentially, the Double Jeopardy Clause guards against (1) a second prosecution for the same

17

offense after acquittal or conviction; and (2) multiple punishments for the same offense.  *See*

18

*Witte v. United States*, 515 U.S. 389, 395–96 (1995) (citing *United States v. Dixon*, 509 U.S. 688,

19

704 (1993)).  Petitioner's claim before this court is concerned with the second part of this

definition.

20

21

"Because the substantive power to prescribe crimes and determine punishments is vested

22

with the legislature [citation omitted], the question under the Double Jeopardy Clause whether

23

punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S.

24

493, 499 (1984).  Sentencing enhancements that increase the penalty for a crime based on the

25

offender's conduct do not offend double jeopardy principles where "a legislature specifically

26

authorizes cumulative punishment under two statutes."  *Missouri v. Hunter*, 459 U.S. 359, 368

27

(1983).  *See also Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006) ("when the

28

legislature intends to impose multiple punishments, double jeopardy is not invoked.").  Therefore,

1   this Court looks to the California legislature's "legislative intent" to determine if the imposition

2   of a separate, consecutive sentence based on the finding that a § 12022.7(e) enhancement was true

3   offends the Double Jeopardy Clause.

4            California courts have made clear that the Double Jeopardy Clause is not offended by the

5   imposition of a separate, consecutive sentence enhancement pursuant to § 12022.7(e).   The

6   California Supreme Court has rejected a Double Jeopardy challenge to multiple punishments

7   stemming from an incident of domestic violence under California law and involving § 12022.7(e).

8   *See People v. Sloan*, 42 Cal.4th 110, 119 (2007) ("[t]he Legislature has made clear that a

9   defendant may be convicted of more than one offense even if they arise out of the same act or

10   course of conduct," citing California Penal Code § 954; and § 12022.7(e) does not offend federal

11   Double Jeopardy principles); *People v. Chaffer*, 111 Cal.App.4th at 1045–46 (a § 12022.7(e)

12   sentence enhancement does not violate California's prohibition against multiple punishments for

13   the same offense as set forth in Penal Code § 654).   Numerous federal courts have also found that

14   imposition of a separate, consecutive sentence based on a § 12022.7(e) enhancement does not

15   violate the Double Jeopardy Clause. *See, e.g., Saddler v. Evans*, No. 09-2067 W(JMA), 2011 WL

16   9150943. At **30-31 (S.D. Cal. Dec. 20, 2011); *Ingram v. Varga*, No. ED CV 10-00732 AHM

17   (VBK), 2011 WL 835788, at **7-9 (C.D. Cal. Jan. 21, 2011); *Oliver v. Evans*, No. CV 09–05727

18   ODW (RZ), 2010 WL 3928752, at *3 (C.D.Cal.2010) (additional punishment under § 12022.7(e)

19   was intended by California legislature, and therefore enhancement does not violate Double

20   Jeopardy) (citing *Plascencia*, 467 F.3d at 1204 and *Sloan*, 42 Cal.4th at 121); *Massie v. Henry*, 19

21   F. App'x. 585, 586–87 (9th Cir. 2001) (unpublished) (imposing § 12022.7 enhancement does not

22   violate double jeopardy because California statute requires proof of separate element of intent to

23   inflict great bodily injury) (citations omitted).

24            For the foregoing reasons, petitioner's sentence on the great bodily injury enhancement

25   does not violate double jeopardy principles.  *See Hunter*, 459 U.S. at 368; *Plascencia*, 467 F.3d at

26   1204.

27   /////

28   /////

1    **D.  Upper Term Sentence**

2    **1.  <u>Violation of State Law</u>**

3    In his final claim for relief, petitioner argues that the trial court abused its discretion under

4    state law when it sentenced him to the upper term on the great bodily injury and firearm use

5    enhancements.  ECF No. 1 at 34-35.  The California Court of Appeal rejected this claim on state

6    law grounds, reasoning as follows:

7    **C. The Upper Enhancement Terms**

8    **1. Background**

9    At sentencing, after hearing argument from the parties and an
     impact statement from Kentra, the court adopted the probation
10   department's recommendation to impose the four-year midterm on
     the mayhem count.  The court noted the "horrific" nature of the
11   crime and Kentra's severe injuries, while acknowledging defendant
     had no criminal history.  The court agreed with the prosecutor that
12   there were "some aggravating factors," but stated "much of what
     they rely upon are already accounted for in the enhancements.
13   That's just the way the law works."  The court stated, "[w]hen I
     looked at both the aggravating and mitigating factors, on balance
14   it's pretty close . . . ."

15   The court imposed consecutive upper terms for the firearm use and
     bodily injury enhancements.  The court concluded that defendant's
16   firearm use was "aggravated," based in part on Kentra's
     vulnerability, i.e., she was seated on the couch in the locked
17   apartment when defendant shot her.   The upper term was
     appropriate because of "how the gun was used, where the victim
18   was seated at the time.  There was no way out.  And a statement
     was made prior to add terror in the victim's mind."
19

20   As to the great bodily injury enhancement, the court concluded the
     upper term was appropriate based on Kentra's extensive and
21   permanent injuries.   The court noted Kentra's survival was
     "miraculous."  The court also emphasized Kentra had survived not
22   because of anything defendant did but because she put her arm up
     to block defendant's shot from hitting her in the face.  The court
23   stated: "[T]he degree of injury with the victim actually surviving is
     pretty dramatic, and if you just look at Ms. Kentra on first glance
24   she might look fine, but we know that's not true.  Not only are the
     pellets in her head for the rest of her life, the injury runs down her
25   arm, and the lack of mobility is essentially nothing more than what
     has been described as a helper, turns her arm in many ways into an
26   object is how it's described."

27   After announcing the aggregate 19–year sentence, as well as fines
     and restitution, the court asked, "Is there anything else we need this
28   morning?"   Defendant's counsel stated: "Just for me to state my
     objection to the high term for appellate purposes, your Honor."  In

22

1    response to a query from the court, counsel clarified that this
     objection applied to both enhancements.
2

3    **2. Analysis**

4    Defendant contends the trial court abused its discretion by imposing
     the upper terms for the enhancements.  (*See People v. Sandoval*
5    (2007) 41 Cal.4th 825, 847 [trial court's sentencing decisions
     reviewed for abuse of discretion].)  We disagree.

6    In the trial court, defendant did not raise the challenges to his
     sentence that he now asserts on appeal, stating only a general
7    objection to the upper terms "for appellate purposes."  Defendant
     has not shown that his counsel could not have elaborated by stating
8    more specific objections, and has not shown the trial court would
     not have considered such objections.  He has thus forfeited his
9    contentions.  (*See People v. Scott* (1994) 9 Cal.4th 331, 353, 356
     [arguments about manner in which trial court exercises sentencing
10   discretion cannot be raised for first time on appeal].)

11   In any event, defendant has not shown an abuse of discretion.  As to
     the great bodily injury enhancement, defendant suggests the court's
12   reliance on the severity of Kentra's injuries to impose the upper
     term was an improper dual use of this fact.  (See Cal. Rules of
13   Court, rule 4.420(d) ["[a] fact that is an element of the crime upon
     which punishment is being imposed may not be used to impose a
14   greater term"].)   As noted above, although section 12022.7
     generally precludes imposition of a great bodily injury
15   enhancement when such injury is an element of the underlying
     offense (as it is in the case of mayhem, *see Pitts, supra*, 223
16   Cal.App.3d at pp. 1559–1560; *Keenan, supra*, 227 Cal.App.3d at p.
     36, fn. 7), this prohibition does not apply when the injury is
17   inflicted under circumstances involving domestic violence under
     section 12022.7, subdivision (e).   (See § 12022.7, subd. (g);
18   *Hawkins, supra*, 108 Cal.App.4th at pp. 530–531.)  Moreover, in
     selecting the upper enhancement term of five years (§ 12022.7,
19   subd. (e)), the court could reasonably have concluded that Kentra's
     severe and permanent injuries exceeded the minimum necessary to
20   impose the great bodily injury enhancement.   (*See People v.
     Castorena* (1996) 51 Cal.App.4th 558, 562 [upper term may be
21   imposed based on facts exceeding the minimum necessary to
     establish elements of crime].)   The trial court did not abuse its
22   discretion by imposing the upper term.

23   As to the firearm use enhancement, defendant argues that the trial
     court's reliance on Kentra's inability to flee the locked apartment
24   and defendant's threat to kill her are inconsistent with the jury's
     acquittal on the charge of attempted deliberate, premeditated
25   murder.  But the court's conclusion that defendant's gun use was
     aggravated because he took advantage of Kentra's vulnerability and
26   because he threatened her before shooting is not undercut by the
     fact that he may have taken those actions out of passion rather than
27   premeditation.

28   /////

1

2

3

4

> Finally, defendant argues he was remorseful and attempted to obtain medical assistance for Kentra after he shot her. (*See* Cal. Rules of Court, rule 4.414(b)(7).)  As the Attorney General notes, there was also evidence defendant continued to maintain the shooting was an accident.  In any event, defendant has not shown that the court abused its discretion by failing to give significant weight to his apparent remorse.

5    *Allen*, 2012 WL 844532, at **9-10.

6         Petitioner's claim that the trial court abused its discretion in imposing two upper terms is

7    based on state law and was denied by the California Court of Appeal on state law grounds.  As

8    noted above, the state court's decision that petitioner's sentence did not violate state law, derived

9    from its analysis of state law, is binding on this court.  Accordingly, petitioner is not entitled to

10   federal habeas relief on this claim.

11                      **2.  Apprendi/Cunningham Claims**

12        Petitioner argues for the first time in the traverse that his sentence violates the decisions of

13   the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000),

14   *Cunningham v. California*, 549 U.S. 270 (2007), and *Blakely v. Washington*, 542 U.S. 296

15   (2004).  ECF No. 15 at 8-11.  In *Apprendi*, *Cunningham*, and *Blakely*, the United States Supreme

16   Court established that, for Sixth Amendment purposes, any fact that increases the penalty for a

17   crime beyond the prescribed statutory maximum, except the fact of a prior conviction, must be

18   submitted to a jury and proved beyond a reasonable doubt.

19        A traverse is not the proper pleading to raise additional grounds for relief.  *See*

20   *Cacoperdo*, 37 F.3d at 507 (a traverse is not the proper pleading to raise additional grounds for

21   relief); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("we review only

22   issues which are argued specifically and distinctly in a party's opening brief").  Accordingly, to

23   the extent petitioner is attempting to raise a new claim in the traverse based on the Sixth

24   Amendment, habeas relief should be denied.  Petitioner has also failed to exhaust any such claim

25   in state court.  Specifically, petitioner did not raise a Sixth Amendment challenge to his sentence

26   in state court or cite the *Apprendi*, *Cunningham*, and *Blakely* decisions in his state court briefs.

27   Exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas

28   corpus.  28 U.S.C. §§ 2254(b)(1).

Even if petitioner had properly raised in this court a Sixth Amendment claim based on *Apprendi*, *Cunningham*, and *Blakely*, and assuming the claim is not subject to a procedural default, petitioner would not be entitled to federal habeas relief. Pursuant to California law at the time petitioner was sentenced (August 31, 2010), California's Determinate Sentencing Law for a violation of a statute specifying three terms of imprisonment had been amended in response to the *Cunningham* decision to provide that the choice between the three terms "shall rest within the sound discretion of the court" without the need to find and weigh aggravating or mitigating factors. *See* Cal. Penal Code § 1170(b) (2009). In light of this amendment to California's sentencing law, the trial judge's exercise of discretion to sentence petitioner to the maximum term for the sentence enhancements did not violate the Sixth Amendment. *See Chioino v. Kernan*, 581 F.3d 1182, 1186 (9th Cir. 2009) (describing California's amended Determinate Sentencing Law as "amending [the law] to comply with the constitutional requirements of *Cunningham*"); *Butler v. Curry*, 528 F.3d 624, 652 n. 20 (9th Cir. 2008) ("Following the decision in *Cunningham*, the California legislature amended its statutes such that imposition of the lower, middle or upper term is now discretionary and does not depend on the finding of any aggravating factors."); *Ochoa v. Uribe*, No. ED CV 12-586-RGK (PLA), 2013 WL 866118, at *7 (C.D. Cal. Jan. 28, 2013) ("Because the amendment to §1170(b) eliminated the middle term as the statutory maximum, petitioner has not shown that the imposition of the upper terms violated the rule formed in *Apprendi*, *Blakely*, and *Cunningham*."); *Lloyd v. Gonzalez*, No. CV 11-3321 PJW, 2012 WL 84046 at *3 (C.D. Cal. Jan. 10, 2012) ("Under [the 2007 amendment to California Penal Code § 1170(b)] the trial judge was authorized in its (sic) discretion to sentence Petitioner to the upper term without any aggravating factors being proven to a jury or admitted by Petitioner."); *Jones v. Knipp*, No. EDCV 09-1395-JSL(CW), 2012 WL 3839428 at *6 (C.D. Cal. July 27, 2012).

Moreover, even assuming arguendo that the trial court did violate the Sixth Amendment in selecting the upper term sentence on the sentence enhancements, any such error would be harmless in this case. *See Washington v. Recuenco*, 548 U.S. 212, 218-22 (2006) (*Apprendi* errors are subject to harmless error analysis); *see also Brecht,* 507 U.S. at 623. Here, there is no doubt that a jury would have found that the victim suffered great bodily injury and that petitioner

1  committed the crimes with use of a firearm.  The resulting sentence would have been the same

2  even if the issue had been submitted to the jury.

3      Accordingly, for all of these reasons, petitioner is not entitled to federal habeas relief on a

4  claim that his sentence violates the Sixth Amendment, as set forth in the *Apprendi*, *Cunningham*,

5  and *Blakely* decisions.

6  **IV. Conclusion**

7      For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

8  application for a writ of habeas corpus be denied.

9      These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within fourteen days after service of the objections.  Failure to file

15  objections within the specified time may waive the right to appeal the District Court's order.

16  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

17  1991).  In his objections petitioner may address whether a certificate of appealability should issue

18  in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

19  2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

20  final order adverse to the applicant).

21  DATED:  April 29, 2015.

22                        EDMUND F. BRENNAN
23                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

26